**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy  (#304851)
Charles H. Linehan (#307439)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREW S. SCHULTZ, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMPINJ, INC., CHRIS DIORIO, and ERIC BRODERSEN,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Drew S. Schultz ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Impinj, Inc. ("Impinj" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Impinj; and (c) review of other publicly available information concerning Impinj.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired Impinj securities between May 7, 2018 and August 2, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Impinj claims that it is working to deliver a platform that powers item-to-cloud connectivity, enabling developers to innovate Internet-of-Things, or IoT, applications.

3.      On August 2, 2018, Impinj announced that it was delaying the release of its second quarter 2018 results. The Company also disclosed that its Audit Committee commenced an independent investigation in connection with a complaint filed by a former employee, and that Impinj contacted the SEC to advise the SEC of

the independent investigation.  Impinj further disclosed that it would "not be in a position" to file its Form 10-Q until after the Audit Committee completed its investigation.

4.     On this news, Impinj's share price fell $3.02 per share, or 13.7%, to close at $18.97 per share on August 3, 2018, on unusually heavy trading volume.

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company had engaged in conduct that could lead to an employee complaint and/or Audit Committee investigation; (2) that the Company lacked adequate internal and financial controls; and (3) that, as a result of the foregoing, Defendants' statements about Impinj's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

11.     Plaintiff Drew S. Schultz, as set forth in the accompanying certification, incorporated by reference herein, purchased Impinj securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Impinj, Inc. is incorporated in Delaware and its principal executive offices are in Seattle, Washington.  Impinj's common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "PI."

13.     Defendant Chris Diorio ("Diorio") was the Chief Executive Officer ("CEO") of Impinj at all relevant times.

14. Defendant Eric Brodersen ("Brodersen") was the Chief Financial Officer ("CFO") of Impinj at all relevant times.

15. Defendants Diorio and Brodersen (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Impinj's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.    Impinj claims that it is working to deliver a platform that powers item-to-cloud connectivity, enabling developers to innovate Internet-of-Things, or IoT, applications.

### Materially False and Misleading
### Statements Issued During the Class Period

17.    The Class Period begins on May 7, 2018.  On that day, the Company issued a press release entitled "Impinj Announces First Quarter 2018 Financial Results." Therein, the Company, in relevant part, stated:

> Impinj, Inc. (NASDAQ: PI), a leading provider and pioneer of RAIN RFID solutions for identifying, locating and authenticating everyday items, today announced its financial results for the quarter ended March 31, 2018.

> "Based on team execution, enhanced partner inventory visibility and positive bookings trends," said Chris Diorio, Impinj co-founder and CEO, "we believe we are on track to make the first half of 2018 the turning point for our business."

> **First Quarter 2018 Financial Summary**

> - Revenue was $25.1 million
> - GAAP gross margin of 46.9%; non-GAAP gross margin of 49.2%
> - GAAP net loss of $14.4 million, or loss of $0.68 per basic and diluted share using 21.1 million shares
> - Adjusted EBITDA loss of $7.1 million
> - Non-GAAP net loss of $8.0 million, or loss of $0.38 per diluted share using 21.1 million shares, calculated using our historical methodology for non-GAAP net income; see "Non-GAAP Financial Measures" below for more information

> A reconciliation between GAAP and non-GAAP and a description of the methodology we intend to use for calculating non-GAAP net loss for future periods is provided in the "Non-GAAP Financial Measures" section below.

> **Second Quarter 2018 Financial Outlook**
> Impinj provides guidance based on current market conditions and expectations; actual results may differ materially. Please refer to the comments below regarding forward-looking statements. The following

table presents Impinj's financial outlook for the second quarter of 2018 (in millions, except per share data):

Non-GAAP Net loss per share — basic and diluted          $(0.38) to $(0.30)

[1] GAAP net loss guidance excludes the impact of forecasted stock-based compensation expense related to the voluntary stock option exchange offer announced on April 18, 2018.

A reconciliation between GAAP and non-GAAP is provided in the "Non-GAAP Financial Measures" section below.

18.     On May 8, 2018, Impinj filed its quarterly report with the SEC on Form 10-Q for the quarter ended March 31, 2018.  The Company's 10-Q was signed by Defendant Brodersen and reaffirmed the financial results announced in the press release issued on May 7, 2018.

19.     The Form 10-Q also contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), signed by defendants Diorio and Brodersen, who certified the following:

1. I have reviewed this Quarterly Report on Form 10-Q of Impinj, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements were made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the small business issuer as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the

period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

20.    The above statements identified in ¶¶17-19 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose: (1) that the Company had engaged in conduct that could lead to an employee complaint and/or Audit Committee investigation; (2) that the Company lacked adequate internal and financial controls; and (3) that, as a result of the foregoing, Defendants' statements about Impinj's business, operations, and prospects, were materially false

and/or misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

21.    On August 2, 2018, Impinj announced that it was delaying the release of its second quarter 2018 results. The Company also disclosed that its Audit Committee commenced an independent investigation in connection with a complaint filed by a former employee, and that Impinj contacted the SEC to advise the SEC of the independent investigation.  Impinj further disclosed that it would "not be in a position" to file its Form 10-Q until after the Audit Committee completed its investigation.  In greater part, the Company stated:

> Impinj, Inc. (NASDAQ: PI), a leading provider and pioneer of RAIN RFID solutions for identifying, locating and authenticating everyday items, announced today that it anticipates reporting stronger-than-expected results for second quarter 2018. The Company also announced it will delay its second-quarter 2018 earnings release and investor conference call, as well as the filing of its Quarterly Report on Form 10-Q, for the quarter ended June 30, 2018.

> **Preliminary Results for Second Quarter 2018**

> Second-quarter revenue was $28.5 million, above the high end of the Company's guidance. "Endpoint IC sales exceeded expectations even as our inlay partners further reduced their inventory. We believe that our partners' endpoint IC inventory correction is now mostly resolved," said Impinj co-founder and CEO, Chris Diorio.

> "Our systems business rebounded nicely from first quarter 2018 as reader IC supply improved and project-based deal timing turned more favorable," continued Diorio. "We saw continued strong reader IC demand and expect to meet that demand in the third quarter as our reader IC supply improves. Despite the more favorable deal timing, our APAC team reorganization continued to impact our systems business growth on a year-over-year basis as that team ramps productivity. Regardless, we remain confident in the quality and size of our opportunities and our pipeline is growing."

> The Company reduced its overall inventory by $1.4M, led by an endpoint IC inventory reduction that exceeded expectations. Impinj continues to forecast further inventory reductions in the second half of 2018.

"In summary, we are pleased with the operational excellence the Impinj team delivered this quarter," continued Diorio. "We expect to outperform our guidance on revenue, EPS, adjusted EBITDA and inventory. Sequentially, on a non-GAAP basis, gross margins increased slightly and operating expenses decreased. Our backlog is growing, and we continue to believe the first half of 2018 was the turning point for our business. We would like to personally thank each and every Impinj employee for their focus and dedication to executing our vision of identifying, locating and authenticating every item in our everyday world."

All financial results in this press release were prepared by management and are preliminary. As noted below, the Audit Committee of Impinj's Board of Directors has commenced an independent investigation. Because the investigation is not yet completed and no conclusions with respect thereto have been reached, Impinj is currently unable to determine whether any changes will be required with respect to its reported results of operations for the three and six months ended June 30, 2018 or any other period, as well as any impact on the Company's internal control over financial reporting.

**Audit Committee Investigation**

The Audit Committee of Impinj's Board of Directors has commenced an independent investigation in connection with a complaint filed by a former employee. The Audit Committee has retained independent counsel to assist it in its investigation. Impinj has contacted the Securities and Exchange Commission ("SEC") to advise it that an independent investigation is underway, and the Audit Committee intends to provide additional information to the SEC as appropriate as the investigation proceeds. Impinj cannot predict the duration or outcome of the investigation, and will not be in a position to file Form 10-Q until the Audit Committee completes its investigation.

22.     On this news, Impinj's share price fell $3.02 per share, or 13.7%, to close at $18.97 per share on August 3, 2018, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Impinj securities between May 7, 2018 and August 2, 2018, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times,

members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

24.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Impinj's common stock actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Impinj shares were traded publicly during the Class Period on the NASDAQ.  As of April 30, 2018, Impinj had 21,339,989 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Impinj or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

25.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

26.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27.     Common questions of law and fact exist as to all members of the Class

and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Impinj; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

29.     The market for Impinj's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Impinj's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Impinj's securities relying upon the integrity of the

market price of the Company's securities and market information relating to Impinj, and have been damaged thereby.

30.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Impinj's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Impinj's business, operations, and prospects as alleged herein.

31.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Impinj's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages

complained of herein when the truth was revealed.

## LOSS CAUSATION

32. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

33. During the Class Period, Plaintiff and the Class purchased Impinj's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

34. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Impinj, their control over, and/or receipt and/or modification of Impinj's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Impinj,

1  participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

35.   The market for Impinj's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Impinj's securities traded at artificially inflated prices during the Class Period.  On July 23, 2018, the Company's stock price closed at a Class Period high of $25.35 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Impinj's securities and market information relating to Impinj, and have been damaged thereby.

36.   During the Class Period, the artificial inflation of Impinj's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Impinj's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Impinj and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class

purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

37.    At all relevant times, the market for Impinj's securities was an efficient market for the following reasons, among others:

(a)    Impinj stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Impinj filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Impinj regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Impinj was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

38.    As a result of the foregoing, the market for Impinj's securities promptly digested current information regarding Impinj from all publicly available sources and reflected such information in Impinj's stock price. Under these circumstances, all purchasers of Impinj's securities during the Class Period suffered similar injury

through their purchase of Impinj's securities at artificially inflated prices and a presumption of reliance applies.

39.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause

actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Impinj who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

41.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Impinj's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

43.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts

necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Impinj's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Impinj's financial well-being and prospects, as specified herein.

45. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Impinj's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Impinj and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

46.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

47.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Impinj's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by

Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

48.   As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Impinj's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Impinj's securities during the Class Period at artificially high prices and were damaged thereby.

49.   At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Impinj was experiencing, which were not

disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Impinj securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

50.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     Individual Defendants acted as controlling persons of Impinj within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the

Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55.    As set forth above, Impinj and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:  August 7, 2018                          **GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff*

**SWORN CERTIFICATION OF PLAINTIFF**

**IMPINJ, INC. SECURITIES LITIGATION**

I,  Drew Schultz individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase the Impinj, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Impinj, Inc. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:


6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.


I declare under penalty of perjury that the foregoing are true and correct statements.

8/6/2018
_____
Date

DocuSigned by:
*Drew Schultz All Rights Reserved*
FE7B89C0EAA84E6...
_____
Drew Schultz

**Drew Schultz's Transactions in Impinj, Inc. (PI)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 07/20/2018 | Bought | 180 | $25.1098 |